STATE EX REL. BURTON JUNIOR POST

*v.*

OTTO C. BOLES, WARDEN,
WEST VIRGINIA PENITENTIARY

(No. 12150)

Submitted January 30, 1962.          Decided April 3, 1962.

*Wilbur D. Webb*, for Relator.

*C. Donald Robertson, Attorney General, Claude A. Joyce, Assistant Attorney General,* for respondent.

BROWNING, JUDGE:

Petitioner, Burton Junior Post, applied to this Court on May 20, 1961, for a writ of habeas corpus ad subjiciendum alleging that: on May 28, 1956, the grand jury attending the Circuit Court of Roane County returned twelve (12) separate felony indictments against him; on May 29, 1956, he entered a plea of guilty to each of said indictments and was sentenced thereon to an aggregate term of one hundred twenty-five (125) years in the penitentiary of this state; and, such convictions and sentences are void in that he was denied the assistance of counsel in answering to such indictments and thus deprived of his constitutional right to due process of law. In support of his petition, as exhibits, he filed typewritten copies of the alleged indictments, the sentencing orders and the commitment orders entered thereon, all purportedly certified by the Circuit Clerk of Roane County. Ten of these indictments were against the petitioner, Burton Junior Post, and Peggy Ann Hosey, as joint defendants. Nos. 1, 2 and 3 are for armed robbery, Indictment No. 2 being for the armed robbery of the mother of Peggy Ann Hosey; Nos. 4 and 5 are for kidnapping; Nos. 6, 7, 8, 9 and 10, each of which contains two counts, one count of breaking and entering and one count of entering without breaking, and the larceny of property from three schoolhouses, a private dwelling and a church. The other two indictments, Nos. 1 and 2, against Burton Junior Post as the sole defendant, are for forgery. The sentencing orders show that petitioner, upon his pleas of guilty, was sentenced: to twenty-five year terms on each of indictments Nos. 1, 2, 3, 4 and 5, the sentences to run consecutively; to indeterminate terms of one to ten years on indictments Nos.

6, 7, 8, 9 and 10, the sentences to run concurrently with the sentences on indictments Nos. 1, 2, 3, 4 and 5; and, to indeterminate terms of two to ten years on indictments Nos. 1 and 2, in which he was the sole defendant, the sentences to run concurrently with the sentences theretofore imposed.

This Court refused to issue the writ on May 29, 1961, and, on petition to the Supreme Court of the United States, that Court granted a writ of certiorari, vacated the judgment of this Court and remanded the case for hearing, *Post v. Boles,* 82 Sup. Ct. 247 (1961), pursuant to which mandate this Court issued the writ as prayed for, appointed counsel for petitioner, and set the case for hearing on January 30, 1962.

The facts in this case, stipulated by counsel, are briefly as follows: Petitioner, under the name of Burton Post, Junior, at the age of fourteen, was committed to Weston State Hospital from Roane County on January 16, 1946, as a mental defective; shortly after admission he was diagnosed as a psychoneurotic, psychasthenic type; on July 29, 1948, he was diagnosed as a phychopathic personality; on August 20, 1948, he was diagnosed as a schizophrenic reaction, chronic undifferentiated type; he "eloped" from the hospital in September, 1948, November, 1948, July, 1949, and September, 1949; while out of the hospital subsequent to September, 1949, he committed the felony of breaking and entering, and various misdemeanors, in Gilmer County and on September 29, 1949, with the assistance of court appointed counsel he entered a plea of guilty to the indictment for breaking and entering and was sentenced to an indeterminate term of one to ten years; he was examined on September 29, 1949, by Dr. Zeller, Superintendent of Weston State Hospital, and was determined to be without psychosis; he was later returned to Weston State Hospital where, on October 15, 1949, he was examined by the staff, was considered to be without psychosis, and was discharged as restored to sanity.

Petitioner, by affidavit, affirms that: he was returned to the penitentiary, on the sentence of one to ten years meted out to him in Gilmer County, and served said sentence until January 19, 1956, when he was released; the crimes for which he was convicted were allegedly committed in April,

1956; he was required to plead to the twelve separate indictments without assistance of counsel, the Court having failed to appoint counsel or advise him of his right to same, and, afterwards, while confined to the jail of Roane County, he was refused the assistance of counsel; the Circuit Court made no attempt to explain to him the consequences of his pleas and did not inform him of its intention to impose sentences totaling one hundred twenty-five years; he was, in 1956, twenty-five years of age, had finished the eighth grade, "ignorant in the law, unintelligent, scared, bewildered and probably suffering from mental disability;" and, while in the penitentiary, in the month of June or July, 1961, he again suffered a mental attack, the duration of which is not known. Jerry Starcher, an inmate of the penitentiary, serving a life term for "assault against a female person", upon affidavit, affirmed that he was present in the courtroom of the Circuit Court of Roane County at the time petitioner was arraigned, pleaded, and sentenced and asserts that at no time was petitioner informed of his right to counsel or of the probable consequences of his pleas of guilty.

In behalf of the respondent, four affidavits were submitted. George M. Scott, presently Prosecuting Attorney of Roane County, affirmed that:   during the year 1956 he was an Assistant Prosecuting Attorney for Roane County; he assisted in the preparation of the indictments against petitioner; he was present when petitioner was arraigned on said indictments before the Honorable Lewis H. Miller, Judge, now deceased; Judge Miller followed an invariable practice of inquiring of defendants charged with felonies as to whether they were represented by, or desired, counsel; Judge Miller specifically inquired of petitioner whether he was represented by counsel, to which inquiry petitioner replied in the negative; he distinctly remembers that Judge Miller then advised petitioner of his right to counsel and asked if he desired the Court to appoint counsel, specifically advising petitioner that he was charged with approximately twelve felonies, to which petitioner replied that he did not desire the services of counsel and wanted to plead guilty; and, thereafter, the indictments were read and explained to petitioner by Judge Miller and, upon petitioner's separ-

ate pleas of guilty, the sentences shown by the record were imposed. Ernest H. Barnes, the jailor in charge of the Roane County jail in 1956, affirmed that: he participated in an attempt to apprehend petitioner and his co-defendant, Peggy Ann Hosey, while they were in the process of armed robbery but due to threats by petitioner to kill a hostage he and the other officers desisted; petitioner and his co-defendant subsequently took two hostages and started to make "a getaway" until they were captured at a roadblock on a one-way bridge; he assisted in removing petitioner from the jail and was present in the courtroom at the time petitioner pleaded to the indictments against him; he does not recall whether Judge Miller advised petitioner of his right to counsel but asserts that it was Judge Miller's usual practice to do so; he does recall that Judge Miller explained each indictment to petitioner at the time he read the same to him and before calling for his plea and that, with respect to one indictment, for statutory rape, Judge Miller advised petitioner that such indictment carried a maximum penalty of death, and the petitioner then entered a plea of not guilty to that indictment; he was in contact with the petitioner, at least three times daily, during the period when petitioner was confined to the Roane County jail, a period slightly in excess of one month, and engaged in lengthy conversations with him; during this period petitioner displayed average intelligence, was much concerned about the punishment of the girl, Peggy Ann Hosey, and never said or did anything to indicate any mental illness or deficiency; and, in his opinion, petitioner was fully capable of understanding the nature and consequences of his acts, both at the time of the commission of the crimes with which he was charged and at the time he entered his pleas of guilty thereto.

C. W. Dye, Sheriff of Roane County, affirms that: in 1956 he was a member of the Department of Public Safety, commonly called the State Police, assisted in the apprehension of petitioner and was present in the courtroom at the time petitioner entered his pleas of guilty to the several indictments; he does not recall specifically that Judge Miller advised petitioner of his right to counsel, but knows of his own knowledge that it was Judge Miller's practice to so

advise persons charged with crimes and to appoint counsel when desired; and, petitioner answered questions intelligently, carried on sensible conversations and seemed to be rational from the time he was arrested until he was delivered to the penitentiary authorities. T. H. Harden, Circuit Clerk of Roane County since January 1, 1945, affirms that: he was present in the courtroom when petitioner and Peggy Ann Hosey were arraigned and heard all of the conversation between Judge Miller and petitioner; he clearly recalls Judge Miller inquiring whether petitioner had counsel and, upon petitioner's reply in the negative, Judge Miller advised him of his right to counsel and asked him whether he desired counsel to be appointed for him, which petitioner declined; Judge Miller read the indictments to petitioner before asking for his pleas, and upon pleading, petitioner responded with a plea of guilty to each of said indictments with the exception of Indictment No. 3, for statutory rape, to which he pleaded "not guilty"; after sentencing on the other pleas Indictment No. 3 was nol-prossed; and, Peggy Ann Hosey, who had been named jointly with petitioner in ten of the indictments, within the presence and hearing of petitioner, requested counsel of the court and counsel was appointed for her. In support of his affidavit, Mr. Harden filed as exhibits Indictment No. 3 against petitioner as the sole defendant for statutory rape, bearing on the reverse side the notations "Not guilty" and "Nolle Pros"; a pauper's affidavit by Peggy Ann Hosey requesting the appointment of counsel; and a court order allowing the statutory fee to counsel appointed for Peggy Ann Hosey.

The typewritten copies of the "ten" indictments, sentencing and commitment orders, exhibited with the petition were stipulated by counsel to be true copies of the originals thereof.

The Supreme Court of the United States has jurisdiction of this case only by virtue of this language in the Fourteenth Amendment to the Constitution: ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdic-

tion the equal protection of the laws." The Sixth Amendment to that document has been held by the Supreme Court of the United States to be applicable only to criminal trials in courts created by the United States Constitution and Acts of Congress pursuant thereto. However, the Sixth Amendment will be quoted in full: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence." It is interesting to compare therewith the provisions of Section 14, Article 3 of the Constitution of this State, which has been a part of the fundamental law of this jurisdiction since the creation of this State ninty-nine years ago. That section provides: "Trials of crimes, and misdemeanors, unless herein otherwise provided shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witnesses against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor." Some of the decisions of this Court interpreting the provisions of Section 14 will be referred to hereinafter.

Apparently it was not until the year 1938 that the Supreme Court of the United States invoked the provisions of the Sixth Amendment to find that a conviction for crime in a federal court was void wherein the prisoner had not been provided with counsel and had not intelligently waived his right thereto. *Johnson* v. *Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1129. This is the 9th headnote in that case: "If the accused is not represented by counsel and has not

competently and intelligently waived his constitutional right, the jurisdiction of the court is lost, the judgment of conviction pronounced by the court is void, and release from imprisonment may be obtained by habeas corpus. U.S.C.A. Const. Amend. 6." The decision in the *Johnson* case was followed in 1941 by the case of *Walker* v. *Johnston,* 312 U.S. 275, 61 S. Ct. 574, 85 L. Ed. 830, and in 1942 by *Glasser* v. *United States,* 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680, to the same effect. It has also been held by the Supreme Court of the United States that a prisoner convicted in a state court of a felony, especially of a capital offense, might invoke habeas corpus to secure his release from imprisonment upon a showing that he was not represented by counsel, did not intelligently waive the right thereto or because of inexperience or mental incapacity the prisoner could not intelligently waive his right thereto. See *Moore* v. *Michigan,* 355 U.S. 155, 78 S. Ct. 191, 2 L. Ed. 2d 167. In the *Moore* case, and other state cases, that Court has exercised jurisdiction and held the convictions to be void because of a denial of the prisoner's rights as guaranteed by the Fourteenth Amendment to the Constitution.

In this case two of those decisions are relied upon by counsel for the petitioner. *Uveges* v. *Commonwealth of Pennsylvania,* 335 U.S. 184, 68 S. Ct. 1443, 92 L. Ed. 1898, decided December 13, 1948, and *Commonwealth of Pennsylvania* v. *Claudy,* 350 U.S. 116, 76 S. Ct. 223, 100 L. Ed. 126, decided January 9, 1956. In the *Uveges* case the prisoner, seventeen years of age, pleaded guilty to four indictments for burglary and was sentenced to five to ten years on each indictment, the sentences to run consecutively. In the opinion the Court said: ". . . He should not have been permitted to plead guilty without an offer of the advice of counsel in his situation. If the circumstances alleged in his petition are true, the accused was entitled to an adviser to help him handle his problems. Petitioner was young and inexperienced in the intricacies of criminal procedure when he pleaded guilty to crimes which carried a maximum sentence of eighty years. There is an undenied allegation that he was never advised of his right to counsel. The record shows no attempt on the part of the court to make

him understand the consequences of his plea. Whatever our decision might have been if the trial court had informed him of his rights and conscientiously had undertaken to perform the functions ordinarily entrusted to counsel, we conclude that the opportunity to have counsel in this case was a necessary element of a fair hearing." However, even upon this record three of the Justices dissented. In the *Claudy* case the Supreme Court, upon certiorari, granted the prisoner a hearing, thereby reversing the Supreme Court of Pennsylvania and two inferior courts of that state, which had held that his petition in habeas corpus did not warrant such relief. Even though most of the allegations of the petition were denied in an answer filed by the district attorney, it was held that these allegations in the petition were sufficient to grant the petitioner a hearing: the petitioner was twenty-one years of age when arrested and had attended school only six years; his only experience in criminal procedure was at the age of nineteen when, without the benefit of counsel, he had pleaded guilty to the charges of burglary, larceny, and forgery, for which he was sentenced to six to twelve months in jail; after his arrest he was held incommunicado for three days; "a state trooper grabbed him by the neck and threatened to choke him if he did not confess, and there were threats against the safety of his wife and daughter. Petitioner finally confessed after 72 hours of intermittent questioning and was taken to a justice of the peace"; prisoner waived indictment and agreed to plead guilty to three charges, but a month thereafter he was "taken before the Court of Common Pleas and charged with some 30 offenses"; the assistant prosecuting attorney demanded that petitioner sign a plea of guilty to all thirty charges and when petitioner asked what he was signing the assistant prosecutor said "Sign your name and forget it"; neither the judge nor the prosecutor informed the prisoner of the seriousness of the charges; and he did not know nor was he ever informed that he could have counsel when he entered his plea of guilty to the thirty charges which could have resulted in a maximum sentence of approximately 315 years.

The provisions of Article 3, Section 14 of the Constitution

of this State were adopted by the Delegates to the Constitutional Convention of 1863 to insure that the Legislature of this State should never be permitted to deny to a person charged with crime the rights therein guaranteed. In *State v. Kellison,* 56 W. Va. 690, 47 S. E. 166, decided in 1904, this Court recognized the provision of Article 3, Section 14 with reference to the right of every person charged with a felony to the assistance of counsel, but stated that "The Constitution does not make assistance of counsel a prerequisite to conviction as it does a trial by jury." To the same effect is *State v. Yoes,* 67 W. Va. 546, 68 S.E. 181. In *Wade v. Skeen, Warden,* 140 W. Va. 565, 85 S.E. 2d 845, it was stated: "The constitutional right of the defendant in a criminal case to be represented by counsel has been considered by this Court on numerous occasions. The right guaranteed is not a requirement that every defendant in a criminal case be represented by counsel. It is the right of a defendant to call for or demand counsel and to have counsel act pursuant to the call or demand, whether the demand is made before or after the entry of a plea. That defendant may waive the right is made clear by decisions of this Court, as well as other courts, including the Supreme Court of the United States. See *Hinkle v. Skeen, supra.* It has, of course, been made clear also that such a waiver must be intelligently made, but an intelligent waiver does not imply that a defendant must have precise, or even average, knowledge of every legal or factual question that may arise in the case. He must, however, have sufficient intellect and knowledge to understand and appreciate the consequences of his act of waiver. . . ."

Thus, the sole issue raised in the instant case is whether petitioner "competently and intelligently waived his constitutional right" to counsel in answering to the charges against him. There is no contention by petitioner that he was not guilty of the crimes alleged against him in the twelve indictments to which he entered pleas of guilty or that there were any extenuating circumstances with regard thereto. His only contentions in his petition, his affidavit, and the supporting affidavit of Starcher, are that he was not informed: of his right to counsel; of the possible consequences

of his pleas of guilty; or of the Court's intention to impose sentences aggregating one hundred twenty-five years. As to the last contention, we know of no rule of law which requires a court to inform a prisoner of the exact sentence to be imposed previous to accepting his plea nor, under the present almost universal practice of deferring sentence pending a probationary investigation, could there be.

The contention of the petitioner and his witness, Starcher, that he was not informed of his right to counsel or of the possible consequences of his pleas of guilty is flatly contradicted by the witnesses for the state and by the other facts in the case. Disregarding the statements in the affidavits as to Judge Miller's usual practice, two of the affiants state that petitioner was specifically inquired of as to whether he was represented by counsel and, upon petitioner's reply in the negative, he was informed of his right thereto and asked if he desired counsel to be appointed, which offer petitioner declined. These affidavits also show, which facts are partially substantiated by court orders filed as exhibits, that Peggy Ann Hosey, jointly indicted with petitioner, was arraigned at the same time and, in the presence and hearing of petitioner, requested and had· counsel appointed to represent her. On the question of whether the possible consequences of his pleas were explained to petitioner, the witnesses for the state all aver that each indictment was read and explained to the petitioner. In this regard it is significant to note that petitioner was not charged in only twelve indictments as alleged in his petition but in thirteen, the thirteenth being for statutory rape, entailing a possible death penalty, to which indictment, as shown by a certified copy thereof, petitioner entered a plea of not guilty.

It is true that petitioner had a record of previous mental instability, however, in 1949, after two examinations, one by the Superintendent of Weston State Hospital individually and the other by the staff at that hospital, he was determined to be without phychosis and sane. It is also true that he was but twenty-five years of age at the time he pleaded to the twelve indictments and had but an eighth grade education. However, in the light of all the facts and circumstances it is the view of this Court that the evidence

clearly preponderates to the effect that petitioner was advised of his right to counsel; that he competently and intelligently waived his right thereto; that petitioner was fully informed of the possible consequences of his pleas of guilty; and that petitioner was not deprived of a fair hearing or denied due process of law.

The writ of habeas corpus heretofore awarded is discharged and petitioner is remanded to the custody of the warden of the penitentiary.

*Writ discharged.*