**Burton Junior POST, Appellant,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Appellee.**

**No. 9133.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 14, 1963.

Decided May 19, 1964.

Arthur M. Recht, Wheeling, W. Va., [Court-assigned counsel] (Thomas B. Miller and Jeremy C. McCamic, Wheeling, W. Va., on brief), for appellant.

Claude A. Joyce, Asst. Atty. Gen. of West Virginia (C. Donald Robertson, Atty. Gen., of West Virginia, on brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and BARKSDALE, District Judge.

BOREMAN, Circuit Judge.

Burton Junior Post has been a prisoner in the West Virginia Penitentiary since 1956, serving sentences aggregating 125 years imposed by the Circuit Court of Roane County, West Virginia, after accepting his pleas of guilty to twelve felony indictments in which he was variously charged with armed robbery, kidnapping, breaking and entering or entering without breaking, and forgery. Admittedly he was not represented by

counsel in the state court proceedings. Post filed his habeas corpus petition and, after a plenary hearing, he was denied relief. The District Court prepared a comprehensive opinion which is reported as Post v. Boles, 218 F.Supp. 658 (1963).

It is of historical interest that Post applied to the West Virginia Supreme Court of Appeals for habeas corpus relief in 1961. His application was summarily denied. The Supreme Court granted certiorari and remanded the case for hearing.[1] The West Virginia Supreme Court of Appeals then appointed counsel for Post and proceeded to a determination of his contentions on the basis of affidavits and stipulations of facts. That court concluded that Post was advised by the Circuit Court of Roane County of his right to counsel before pleading to the indictments; that he competently waived the right; that he was fully informed of the possible consequences of his guilty pleas and that he received a fair hearing in accordance with the requirements of due process of law.[2] Certiorari was denied by the Supreme Court of the United States.[3]

The District Court first denied Post's habeas corpus petition without holding a hearing, concluding that disposition of Post's contentions had been made by the West Virginia Supreme Court of Appeals after full and fair consideration. Shortly thereafter, following announcement of the decision of the Supreme Court of the United States in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the District Court recalled this case, appointed counsel for Post and held a plenary hearing.

It is unnecessary to fully restate here certain matters mentioned and discussed by the court below. Post's early years, during which he was incorrigible and a serious disciplinary problem to his foster parents, his commitment to a West Virginia Mental Hospital and escapes there-

from, his conviction of a felony upon his plea of guilty when represented by court-appointed counsel, his confinement for that offense in the West Virginia Penitentiary for about six years, his release on parole only about three months before he "embarked on the criminal spree for which he is now incarcerated," the proceedings in the state court at the time of his arraignment and sentencing are noted by the District Court in its opinion[4] and should be read in connection herewith.

The principal question presented on this appeal is whether Post intelligently and deliberately waived his constitutional right to the assistance of counsel in the state court proceedings. The District Court found as facts that he was offered counsel, that he declined the offer and that his waiver of assistance of counsel was deliberately, understandingly and intelligently made.

As stated by the District Court,

"* * * even prior to the Supreme Court's decision in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, it was clear that Post had a constitutional right to the assistance of counsel before being called upon to answer these numerous, serious and complex charges. Uveges v. [Commonwealth of] Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127, and [Commonwealth of] Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126, make that plain. It is true, also, that 'where the right to counsel is of such critical importance as to be an element of Due Process under the Fourteenth Amendment, a finding of waiver is not lightly to be made.' Brennan, J., in Moore v. Michigan, 355 U.S. 155 at 161, 78 S.Ct. 191 at 195, 2 L.Ed.2d 167. It has often been stated that the constitutional

1. Post v. Boles, 368 U.S. 144, 82 S.Ct. 247, 7 L.Ed.2d 188 (1961).

2. State ex rel. Post v. Boles, 147 W.Va. ——, 124 S.E.2d 697 (1962).

3. Post v. Boles, 371 U.S. 833, 83 S.Ct. 57, 9 L.Ed.2d 70 (1962).

4. 218 F.Supp. 658 (1963).

right to counsel may be waived only if the accused knows of the right and deliberately and intentionally abandons it. See, e. g., United States v. Lavelle, 306 F.2d 216 (2 Cir., 1962)." [5]

The District Court, after determining that Post had been advised by the presiding judge of his right to court-appointed counsel, correctly noted that Post had the burden of showing, by a preponderance of the evidence, that he did not intelligently and understandingly waive such right; [6] further, that whether a waiver of counsel is understandingly and competently made "is a question of fact to be decided with reference to the particular facts of each case." [7]

The proceedings in the state court were not reported and the District Judge indicated his familiarity with this unfortunate but customary practice in the state courts of West Virginia. Only the formal orders showing Post's appearance *without* counsel, his arraignment, plea and sentence in each case were available. The presiding state court judge is deceased, the then Prosecuting Attorney is incapacitated and the Clerk of the state court, now ill, retired and living in Mississippi, was not available as a witness at Post's hearing.

Post testified that at no time before or during the state court proceedings was he offered the assistance of counsel and that there was no mention of counsel to him. This testimony was rejected by the court below. Mr. Scott, who was called as a witness for the respondent warden, testified that he was then the Assistant Prosecuting Attorney (now the Prosecuting Attorney) of Roane County; that

he assisted in the preparation of the indictments against Post; that he was present in court during the proceedings in question; that the judge followed his usual practice of advising defendants of their right to counsel; that the judge, in his preliminary remarks to Post, included statements to the effect that Post was charged with a number of serious crimes and that the rape charge [8] carried a possible death sentence; that the judge asked Post if he had counsel and if he wanted counsel and Post replied, decisively, that he did not desire an attorney but wanted to plead guilty; that each indictment was then read to Post and he was asked to plead thereto; that Post's codefendant,[9] who was arraigned after Post was remanded to jail, was represented by counsel *appointed by the court*. The District Court stated: " * * * It is quite clear that the late Judge of the Circuit Court of Roane County made an offer of counsel to Post *in unequivocal terms, and the latter declined the offer in a similar vein.*" [10]

There was introduced in evidence a detailed narrative statement, in Post's handwriting, of the events and exploits of the month preceding the arrest of Post and his companion. The statement was signed by Post and, according to the accredited testimony of the jailor, was prepared by Post, after he requested that he be supplied with pencil and tablet, while he was confined in jail and before he was indicted. Post testified that this statement, which fully disclosed the commission of the offenses (except rape) with which he was subsequently charged, was written by him at the direction of, and as dictated by, the jailor. Post's testimony in this regard was rejected by

---

5. Post v. Boles, 218 F.Supp. 658, 661.

6. As to petitioner's burden of proof, the District Court cited Moore v. Michigan, 355 U.S. 155 at 161–162, 78 S.Ct. 191, and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

7. 218 F.Supp. 658, 661.

8. In addition to the charges hereinbefore mentioned, Post was charged with stattory rape of his fourteen year old female

companion who accompanied him during his crime spree. She was jointly indicted with Post on all the other charges except the forgeries. Post entered a plea of not guilty to the rape charge and that indictment was later dismissed on motion of the Prosecuting Attorney.

9. See footnote 8.

10. 218 F.Supp. 658, 661.

the court as incredible. Indeed, it was clear that the statement could only have been prepared by one with full knowledge of the facts recited therein. Post further testified that he was informed by the jailor that he would probably be sentenced to no more than ten years if he should plead guilty. The jailor emphatically denied making any such statement or representation and the court concluded that Post's statement was untrue.

In connection with the finding, as fact, that Post's waiver of the assistance of counsel was competently and intelligently made, the District Court had this to say:

"The record in this case reveals an individual who was ready, willing, and even anxious to face the consequences of a wild fling at lawlessness. Post's representations that he was not aware of his right to counsel do not impress the court. And no significant factor appears in the record from which it can be inferred that Post had any hidden doubt as to whether he should interpose an attorney between himself and a prompt liquidation of his criminal liability. Further, in spite of Post's previous mental condition, the evidence showed that he was acutely sensible of his predicament. He was described by all witnesses as appearing normal and lucid. His tolerably literate confessional statement discloses no hint of abnormality. On the contrary, it shows normal feelings of remorse and a not-unnatural concern for and desire to exculpate Peggy Ann Hosey, with whom Post was emotionally attached. That concern was reiterated in open court when the Judge asked Post if there was anything he wished to say prior to the imposition of sentence."

The court had the opportunity to closely observe Post as he testified and to form an opinion as to whether he was worthy of belief. Having found that Post's testimony with reference to the preparation of his written statement and the alleged conversation with the jailor was false,

it is not surprising that the court should view Post's testimony as a whole with great suspicion. While the court made no specific findings concerning other portions of Post's testimony to the effect that he was unaware of the nature of the charges against him before being brought into court, it was shown in the evidence that Post had been visited in jail by his foster parents and by a minister, that he had read newspaper accounts of his sensational exploits, capture and arrest and that he had been taken before a Justice of the Peace for a preliminary hearing. Even Post would not say that he was not informed by the Justice of the Peace of the charges against him. When interrogated, he answered: "I don't recall specifically." We have carefully examined the transcript of Post's testimony and we have been unable to find any direct and positive assertion by him that he was unaware of his constitutional right to the assistance of counsel. The principal complaint seems to be that he did not have counsel and that the court did not inquire as to whether he wanted counsel. In fact, it appears from the record below that Post was proceeding on the theory that proof of the fact that he was not represented by counsel in the state court, and that fact alone, would be sufficient to discharge his burden to prove violation of his constitutional rights. It was only after the court had indicated its disagreement with such theory that Post was then further interrogated by his own counsel and he testified that there was no inquiry by the sentencing judge with regard to representation by counsel.

In Aiken v. United States, 296 F.2d 604 (4 Cir. 1961), a federal prisoner sought post conviction relief under 28 U.S.C.A. § 2255 on the ground that his constitutional right to the assistance of counsel had been violated at the time of the entry of his plea of guilty under Rule 20, F.R.Crim.P., in that his waiver of counsel was not intelligently made. The District Court before which the plea was entered failed to inform the prisoner

of the possible sentence to which he would be exposed on a plea of guilty. In fact, the record disclosed that the court made no inquiry of the prisoner other than to ask if he had been furnished with copies of the indictments and if he was familiar with the charges therein. Notwithstanding the fact that this court, speaking through Chief Judge Sobeloff, undertook to point out instructively to the trial courts the minimum inquiry which should be made before permitting an accused to waive his right to counsel, it was held under the circumstances there present that Aiken had not sustained the burden of showing that he did not understand his constitutional rights and that his waiver of counsel was not competently and intelligently made. "A failure to fully perform this duty [the duty to interrogate and advise the accused before permitting a waiver of counsel] does not, however, automatically render the proceedings unconstitutional." 296 F.2d 604, 607.

■ We must accept the District Court's findings and conclusions unless we can say that they are clearly erroneous. Post's testimony with respect to matters material was in conflict with other testimony and it was for the court to apply the usual and accepted credibility tests and to evaluate the conflicting testimony in a search for truth. We are not prepared to reject the findings as clearly erroneous or question the determination that Post failed to carry the burden of proving his allegations by a preponderance of the evidence. The Supreme Court, in Moore v. Michigan, 355 U.S. 155, 161, 78 S.Ct. 191, 195 (1957), observed that the constitutional right to the assistance of counsel "does not justify forcing counsel upon an accused who wants none."

■ The next question presented is stated in petitioner's brief as follows: "Was it proper to admit testimony of the Assistant Prosecuting Attorney which served to supply the omission in the sentencing order relative to waiver of the representation of counsel?" We think the question must be answered in the affirmative.

■ The formal order of sentence stated that Post appeared *without* counsel which is a true recital of undisputed fact. The testimony of Mr. Scott was offered by respondent, not to contradict the formal court order in any particular, but to supply correct details of the proceedings in the state court concerning which the formal order was silent and concerning which Post had already testified. The burden was upon Post to prove, by a preponderance of the evidence, the alleged violation of his constitutional right. It would indeed be unthinkable to hold that Post's self-serving testimony must be accepted as true and that, by invoking the application of this suggested novel principle, the respondent has no right or opportunity to refute it. No case has been called to our attention, and we have found none, to support Post's contention. In Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191 (1957), state court proceedings were before the Supreme Court for review. No stenographic transcript was taken of the proceedings at the time of Moore's arraignment and plea of guilty to a charge of murder. Moore, a seventeen year old Negro, was not represented by counsel. He was scared, so he testified, because the Sheriff had expressed doubt as to the ability to protect the prisoner against anticipated mob violence. Two witnesses who were present in the court room testified as to what then transpired and there is neither hint nor suggestion in the Court's opinion that such testimony was improperly admitted in an attempt to refute the prisoner's testimony. Although it was there held, upon the facts considered by the Court, that the waiver of counsel was not competently made, the Court, after citing Johnson v. Zerbst,[11] said:

" * * * Whatever may be the differences in the substantive right

---

11. 304 U.S. 458, 58 S.Ct. 1019 (1938). That case involved a collateral attack upon a federal court judgment of conviction where it was held that the prison-

to counsel in federal and state cases, when the defendant in a state case has established his constitutional right to the benefit of counsel, he should carry the same burden of proving nonwaiver as is required of a defendant in a federal case." 355 U.S. 155, 161, 78 S.Ct. 191, 195.

Other points presented have been considered and we find them to be without merit.

Affirmed.

J. SPENCER BELL, Circuit Judge (dissenting).

I must dissent from the opinion of the majority since in my view the district court's finding that Post "intelligently, understandingly, and competently waived his right to counsel" is without support in the record.[1] The Supreme Court has held that the federal standard of waiver, as established in Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024 (1938),[2] is binding on the states under the fourteenth amendment. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). And while the constitutional right to the assistance of counsel "does not justify forcing counsel upon an accused who wants none," Moore v. Michigan, 355 U.S. 155, 161, 78 S.Ct. 191, 195 (1957), it nonetheless remains true that a high and serious duty is imposed upon a trial judge to determine whether an accused has competently and intelligently waived this constitutional right. As Mr. Justice Black has said:

"To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Von Moltke v. Gillies, 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948).

This duty is imposed on federal and state judges alike, and although Von

---

er had the burden of showing, by a preponderance of the evidence, that he did not have counsel and did not competently and intelligently waive his constitutional right to the assistance of counsel. In United States v. Morgan, 346 U.S. 502, at page 512, 74 S.Ct. 247, at page 253, 98 L.Ed. 248 (1954), a proceeding in the nature of *coram nobis* to set aside Morgan's conviction and sentence for a federal crime, the Court said: " * * * Of course, the absence of a showing of waiver [of legal representation] from the record does not of itself invalidate the judgment. *It is presumed the proceedings were correct and the burden rests on the accused to show otherwise.*" (Emphasis added.)

1. The State concedes that Post, who had been charged with thirteen serious felonies, was constitutionally entitled to legal assistance. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The question before the district court, therefore, was whether Post had effectively waived this constitutional guarantee at his state trial.

2. "If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction * * *." Waiver had been defined by the Court earlier in the opinion as an "intentional relinquishment or abandonment of a known right or privilege." 304 U.S. at 464, 58 S.Ct. at 1023.

Moltke v. Gillies, supra, involved a purported waiver of counsel in a federal court, the above cited language applies equally well to the case before us.

I think the record, even when given a reading most favorable to the contentions of the State, clearly indicates that the trial judge failed to discharge adequately this duty. With the exception of Post, the only witness to what transpired in the courtroom with respect to the appointment of counsel was the then Assistant Prosecuting Attorney, George M. Scott, who prepared the indictments. Pertinent portions of Scott's testimony at the plenary hearing are quoted below:

"Q. I would like for you to tell the Court, Mr. Scott, what you recall about the question of whether he [Post] was offered counsel by the presiding judge at that time.

"A. *Judge Lewis H. Miller was the presiding judge, and I do recall, with clarity, that the judge followed his usual custom, and did ask the defendant, Burton Junior Post, if he had an attorney, and asked him if he wanted an attorney, and the defendant replied with some decision in the matter, no indecision, certainly, that he didn't want an attorney, that he wanted to plead guilty.* (Emphasis added.)

"Q. And *then* what procedure did the judge follow *after that* in disposing of the cases pending against him? (Emphasis added.)

"A. The judge read the indictments in turn to the defendant and after reading them asked for a plea and in each case he responded his plea was guilty, except that, as I recall, in the case of statutory rape, charging the defendant with having sexual relations with Peggy Hosey, being a female under the age of 16 years, he pled not guilty to that charge.

"Q. Do you remember whether or not the judge made any explanation of the possible sentence on any of these indictments to the defendant?

"THE WITNESS: You mean before he asked him for a plea?

"Q. That's right.

"A. Judge Miller—again I don't recall the specific language used—but he told him that he was charged with a number of very serious offenses, and I believe that he did tell him that the rape charge carried a possible death penalty. I believe that to be true."

On cross-examination, after making the witness Scott repeat the above, Post's attorney asked him:

"Q. You have testified that there was an offer from Judge Miller of a right to counsel and a subsequent refusal of that right by the defendant, Burton Post, is that all?

"THE WITNESS: What do you mean 'Is that all?' That's what I testified to, yes.

"Q. Is that all that went on as far as the refusal and the offer?

"A. *Well, Judge Miller didn't argue with him. He asked him if he wanted a lawyer and he said no, and he started the arraignment—started reading the indictments."* (Emphasis added.)

Scott was the State's chief witness at the plenary hearing, and was characterized by the district court as leaving "nothing to be desired as a witness." The district court below and the majority here view Scott's testimony as establishing that the trial judge, prior to accepting Post's refusal of counsel, advised Post that he was charged with a number of serious offenses, including rape, which carried a possible death sentence. They draw the inference that Post rejected counsel only *after* the above remarks about the seriousness of the State's charges were addressed to him from the bench. Although the matter is

not entirely unambiguous, I think the more accurate reading of Scott's testimony is that the trial judge *first* accepted Post's refusal of counsel and *thereafter* warned Post of the serious nature of the charges against him. Thus, the sequence of events, as I read Scott's testimony, is that the trial judge offered Post counsel; Post refused the offer; the trial judge then remarked on the seriousness of the charges, with emphasis on the rape charge; and lastly read down the list of indictments, accepting Post's pleas to each.

But even if I am mistaken as to the import of Scott's testimony, and even if the trial judge made an offer of counsel to Post after warning him of the serious nature of the State's charges, this would by no means comply with the protective duty imposed on a trial judge in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316 (1948). Here, the trial judge faced a twenty-five year old offender, whose formal education ceased after the eighth grade, and who had spent most of his adolescent and post-adolescent years in state mental institutions. Add to this Post's very obvious desire to accept all blame in an effort to exculpate his female companion and accomplice, Peggy Ann Hosey. It would be difficult to imagine a defendant more in need of legal assistance. Post was entitled to be informed of his possible defense of insanity in view of his history; of the probable effect that his self-sacrificing guilty pleas and confessions might or might not have on his accomplice's fate—after all she was only fourteen years old. Only after a thorough understanding of these matters should a man of Post's intelligence and background have been allowed to decide whether to proceed without counsel. I think the trial judge failed to make the "penetrating and comprehensive examination of all the circumstances" that Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323 (1948), required. The trial judge having failed to do so, I find untenable the district court's finding that Post's waiver of counsel was competently and intelligently made. I would reverse.