**Claude A. GRIFFIN, Petitioner,**

v.

**Fred ROSS, Major, Odom Prison, Respondent.**

**Civ. No. 1890.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Aug. 31, 1966.

Claude A. Griffin, pro se.

T. Wade Bruton, Atty. Gen., of North Carolina by Theodore C. Brown, Jr., Staff Atty., Raleigh, N. C., for respondent.

## OPINION and ORDER

LARKINS, District Judge.

### SUMMARY

This cause comes before the Court upon a petition for writ of habeas corpus, filed by a State prisoner pursuant to the provisions of Title 28, U.S.C.A. § 2254. Issues were joined by respondent making answer and filing Motion to Dismiss.

Petitioner alleges that his rights as guaranteed by the Constitution of the United States were denied him in the following particulars:

(1) an illegal confession was submitted,

(2) he was denied conference with family, counsel and friends,

(3) he had incompetent counsel at the original trial,

(4) he was not advised of his constitutional right to remain silent and was

not informed that anything he said could be used against him,

(5) he was illegally brought from New Jersey into South Carolina and then from South Carolina into North Carolina; and

(6) he was detained in the "common jail of Iredell County, North Carolina (for a period of approximately eight months without the right of counsel) and petitioner was, therefore, held incommunicado."

In support of the first and fourth contentions, petitioner alleges that the confession submitted at the murder trial in North Carolina was obtained after interrogation in South Carolina for a period of approximately five days. Petitioner claims that during this period he repeatedly requested counsel, which was denied, and that he was not informed of his right to remain silent and was not told that anything he said could be used against him. Petitioner also contends that any statement made by him was the result of promises of leniency and was made out of fear.

In support of the second contention, petitioner alleges that while being held in South Carolina he was denied the right to counsel and that he was denied the right to communicate with friends and family.

As to the third contention that trial counsel was incompetent, petitioner claims that this incompetency was due to a conflict of interest. According to the petitioner, this conflict of interest became apparent when John Tennant, petitioner's co-defendant, pleaded guilty, thus causing petitioner to enter a plea of guilty. Petitioner states that this conflict of interest arose because counsel represented both defendants although he had been hired by defendant Tennant.

In support of the fifth contention, petitioner claims that he was not advised of his rights as to extradition from the State of New Jersey to the State of South Carolina and from the State of South Carolina to the State of North Carolina.

Petitioner alleges that he was incarcerated in the county jail of Iredell County, North Carolina, for a period of approximately eight months without the privilege of counsel, and that he requested his trial be held as soon as possible but this was not done.

## FINDINGS OF FACT

Petitioner is presently incarcerated in Odom Prison located in Jackson, North Carolina, as a result of a plea of guilty to a charge of murder in the first degree (Iredell County Superior Court, August 1960 Term, Case No. 3835).

He was taken into custody at his home in Union City, New Jersey by the police of that city during the latter part of August 1959 and held for the police authorities of the State of South Carolina for questioning in connection with certain safe robberies occurring in South Carolina. About three or four days later officers representing the South Carolina Law Enforcement Division (hereinafter referred to as SLED) arrived in New Jersey and transported petitioner into the custody of the Sumter County, South Carolina sheriff. It was determined in petitioner's Post-Conviction Hearing held in September 1965 that petitioner came voluntarily into the State of South Carolina after he had waived extradition. This determination was based upon the testimony of the petitioner at the hearing.

Petitioner was interrogated by officers of SLED for a period of about five days. Officers representing the State of North Carolina and the County of Iredell were also present at this interrogation. At this time a warrant had not been issued against the petitioner in North Carolina. Petitioner was advised by the officers of his right to remain silent and told that anything he said could be used against him. Special Agent Garland of the North Carolina State Bureau of Investigation advised the petitioner "that he had the right to an attorney; that he didn't have to talk with us; that anything he might tell us could be used for or against him in a Court of law." Post-Convic-

tion Hearing, page 36. During this interrogation petitioner Griffin made a written confession to the murder of one Chris Henry Lober. One day later, on November 13, 1959, a warrant was issued in Iredell County, North Carolina for the arrest of Claude A. Griffin.

On November 16, 1959, petitioner was brought into North Carolina and taken to the scene of the crime after signing extradition papers to insure South Carolina officials that he would return to that State. At the Post-Conviction Hearing petitioner testified that while he was in North Carolina he was not asked to make any statements relating to the murder. Special Agent Garland testified at the Post-Conviction Hearing that at the scene of the crime petitioner pointed out the window which he entered the night of the crime and the changes that had been made in the house since that night. Petitioner also pointed out the way he and his co-defendant had taken Lober out of the house and down to the store after the beating.

Petitioner was then returned to South Carolina and in January 1960 he was brought back into North Carolina to await trial for the murder of Chris Henry Lober. Petitioner waived extradition proceedings back into North Carolina. Approximately eight months later, petitioner was brought to trial charged with first degree murder.

Petitioner was represented at the trial by the same counsel who represented his co-defendant John Tennant. Counsel had been retained in the first instance by defendant Tennant, but according to the petitioner's testimony at the hearing he signed a contract with counsel stating a fee of $500.00.

Over the objection of the petitioner made through his attorney, a statement of confession to the crime of murder made while petitioner was being held in South Carolina was admitted into evidence. At the close of the State's evidence, after being allowed to confer privately with his counsel, petitioner authorized his attorney to change his plea of not guilty to a plea of guilty. Peti-

tioner, at the Post-Conviction Hearing, testified that "There wasn't much else to do after His Honor, Judge Phillips, allowed the statement to stand and be held as competent evidence before the Jury, and since the statement was going to stand and we didn't have any defense against the statement other than what we had put up and it had been denied, it just didn't seem to be anything else to do but sign the tentative plea of guilty." P.17, Post-Conviction Hearing.

## CONCLUSIONS OF LAW

First, it is necessary to determine if the confession signed by the petitioner while he was being held and the interrogation in South Carolina was voluntary and thus properly admitted into evidence. If the prisoner has received a full and fair hearing in the State court on substantially the same questions later put before the Federal court, a further hearing on these claims of unconstitutionality is unnecessary. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 770 (1963). At the Post-Conviction Hearing held in September 1965, the presiding Judge found as a fact that the statements made by petitioner during the investigation and before his trial were made voluntarily. This finding was based upon the testimony of Special Agent Garland of the North Carolina State Bureau of Investigation, the Sheriff of Iredell County, the Director of the South Carolina Law Enforcement Division, and the petitioner himself. The director of SLED testified there were no promises of leniency or threats made against petitioner. If, in fact, threats or promises had been made, this would have caused the confession to be involuntary, but they were not. The testimony revealed that the petitioner was advised that he had the right to remain silent and that anything he said could be used against him. He was also advised that he had the right to have counsel present but he made no request for counsel. At the close of petitioner's testimony at the hearing he said "I just wanted to say I want to thank the Court for appointing me such a fine lawyer and

also want to thank him for doing such an excellent job." P.43A, Post-Conviction Hearing. Petitioner evidently thought he had received a full and fair hearing at that time, but now comes to this Court for another turn at bat alleging the same grounds as have been previously adjudicated. He does not attack his Post-Conviction Hearing in any manner.

■ It appears that the plea of guilty was in the best interest of petitioner when it is realized that he could have received a sentence of death from the hands of a jury. He had conferred privately with his counsel and upon the advice of his own counsel he changed his plea from not guilty to guilty. It appears that counsel was acting in the best interest of petitioner at this time and there was not present the conflict of interest as alleged by petitioner.

■ Petitioner does not allege any facts which disclose a conflict of interest on the part of the counsel representing him at the trial. It does not appear that the claims of the two defendants were inconsistent so that counsel would have to serve two inconsistent masters. Petitioner alleges only a conclusion that he was forced to plead guilty after his co-defendant pleaded guilty but alleges no facts to support this conclusion. The burden of proof by a preponderance of the evidence rests upon the petitioner and he must allege facts which support his allegations. Post v. Boles, 332 F.2d 738 (4th Cir., 1964).

■■ Petitioner was not denied his right to counsel or the right to consult with family or friends. While being detained by the officers of SLED petitioner was vistied by two Baptist preachers and was also allowed to call his wife. He was told of his right to have counsel but made no request for counsel. "One need not have legal counsel forced upon him, even in a capital case", Ruffin v. Bailey, 254 F.Supp. 599 (E.D.N.C.1964), and where defendant does not request counsel, it is immaterial that interrogation and confession came before he conferred with counsel. The rule of John-son v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) is controlling and the case of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) is not applicable.

■■ It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on habeas corpus. Johnson v. Zerbst, supra. When collaterally attacked, the judgment of a court carries with it a presumption of regularity, Ex parte Cuddy, Petitioner, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154 (1888), and the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance by counsel by a preponderance of the evidence. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), supra.

Petitioner by his own testimony at the Post-Conviction Hearing admitted that he came from the State of New Jersey into the State of South Carolina voluntarily. Petitioner also admitted that he voluntarily signed extradition papers into the State of North Carolina from South Carolina.

■ As to petitioner's claim that he was held in the common jail of Iredell County, North Carolina for a period of approximately eight months without the right of counsel and held incommunicado, it is important to note that petitioner was charged with the capital felony of murder and was not allowed to be released on bail. N.C.Gen.Stat. 15–47 (1955). Petitioner by his voluntary plea of guilty has waived all irregularities occurring prior to the trial, Cerniglia v. United States, 230 F.Supp. 932 (N.D.Ill.1964), because the plea of guilty was intelligently and voluntarily made.

Petitioner only alleged that he was held incommunicado for a period of eight months but he did not allege that this lapse resulted in any loss of testimony or other prejudice to the defendant which impaired the fairness of his trial and, therefore, this does not raise any federal question. Latimer v. Cranor, 9

Cir., 214 F.2d 926 (1954). From an examination of the transcript of the Post-Conviction Hearing, it is apparent that petitioner is entitled to no relief. See Mullen v. Boslow, No. 10,850 (4th Cir., decided Aug. 24, 1966).

### ORDER

Therefore, it is ordered that the petition for writ of habeas corpus be, and the same is hereby denied.

It is further ordered that respondent's Motion to Dismiss be, and the same is hereby allowed.