**UNITED STATES of America ex rel.
Edward BROWN, Petitioner,**

v.

**Edward M. FAY, Warden, Greenhaven
Prison, Respondent.**

United States District Court
S. D. New York.

June 1, 1965.

274

Levy, Gutman & Goldberg, New York City, for petitioner, Jeremiah S. Gutman, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of New York City, for respondent, John De Witt Gregory, Joel Lewittes, New York City, of counsel.

WEINFELD, District Judge.

Petitioner, now serving a sentence under a state court judgment of conviction, seeks his release by way of a Federal writ of habeas corpus. His claim is twofold. First, he contends that when, on May 26, 1943, he entered a plea of guilty to robbery in the first degree, and later when sentence was imposed, he was not fully advised of his now federally protected right to counsel. Second, he argues that even if so advised, he was incapable, being then sixteen years of age, competently and intelligently to waive that right—that both as a matter of law and fact he then lacked the capacity to effect a valid waiver.

Three weeks after the entry of his plea petitioner was sentenced to an indeterminate term of up to thirty years at Elmira Reformatory. In 1945 he was conditionally released on parole, which he soon violated by the commission of a burglary. On his plea of guilty he was sentenced in November 1945 to a term of from five to ten years. Upon this commitment he was permitted to serve concurrently an unexpired portion of his 1943 sentence based upon violation of parole. He was again released on parole, during which intermittent violations occurred. In December 1960, while still subject to parole under the 1943 thirty-year sentence, he was convicted on his plea of guilty to a charge of attempted larceny, second degree. On December 6, 1960 he was sentenced as a multiple offender[1] to a term of from two to four years. The Parole Board, as permitted by New York law,[2] required petitioner to serve the parole violation first, to be followed by the two to four year sentence on the attempted

1. N.Y.Penal Law, McKinney's Consol. Laws, c. 40, § 1941.

2. N.Y.Correction Law, McKinney's Consol.Laws, c. 43, §§ 212, 218, 219.

larceny charge. The petitioner's sole attack here is upon the 1943 conviction.

The petitioner has exhausted all available state remedies,[3] having raised in a coram nobis proceeding in the Nassau County Court the same contentions here urged. A hearing thereon was granted, at which petitioner was the sole witness. The County Court denied his application on February 11, 1963, one month before the United States Supreme Court decided the landmark case of Gideon v. Wainwright.[4] The Appellate Division affirmed the denial on October 21, 1963,[5] and leave to appeal to the New York Court of Appeals was denied in February 1964.[6]

Both the State and petitioner, upon argument and in their respective briefs, urged upon the Court that petitioner's application was ripe for disposition upon the state court record, which includes the testimony of the coram nobis proceeding held by the Nassau County Court. This Court, after a study of the minutes of the hearing and the entire state record, and despite the joint position of respective counsel, was of the view that the present record was inadequate, particu-

larly so since the County Judge made no findings of fact or conclusions of law, nor did he render any opinion.[7] His denial of the writ merely stated that petitioner had "failed to sustain the required burden of proof." Further, the state record failed to contain, among other matters, the official stenographic transcript of what transpired at the occasions of petitioner's arraignment and sentence. Accordingly, this Court ordered a hearing at which both petitioner and the State were afforded an opportunity to submit additional evidence. That hearing has now been held. The record was supplemented by further testimony of petitioner, who was again cross-examined, and by an additional State exhibit, but the stenographic transcripts were not produced.[8]

Two issues are presented. Was petitioner fully advised of his right to the assistance of counsel and, if so, did he intelligently and understandingly waive that right? The summary denial by the County Court of petitioner's application does not reveal just what burden was placed upon the petitioner and what con-

---

3. Petitioner previously applied for relief in this Court, but his petition was dismissed as premature on the ground that even if the 1943 conviction were to be vacated, nonetheless his detention was lawful under the now unchallenged and then unexpired 1960 judgment of conviction. United States ex rel. Brown v. Warden, Green Haven Prison, 231 F. Supp. 179 (S.D.N.Y.1964). See Holiday v. Johnston, 313 U.S. 342. 61 S.Ct. 1015, 85 L.Ed. 1392 (1941); McNally v. Hill, Warden, 293 U.S. 131, 55 S.Ct. 24, 79 L. Ed. 238 (1934).

4. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

5. People v. Brown, 19 A.D.2d 863, 245 N.Y.S.2d 987 (2d Dep't 1963).

6. The State here, in addition to urging dismissal of petitioner's application upon the merits, alternatively urges that the Court should permit the state courts to pass anew upon petitioner's claim on the ground that the coram nobis proceeding was heard and decided before Gideon. While this is true as to the County Court, its denial of petitioner's claim was affirmed by the Appellate Division

seven months after Gideon, and the Court of Appeals refused leave to appeal nearly a year thereafter. In the circumstances it must be deemed that the appellate courts considered petitioner's claim in the light of Gideon. Consequently no purpose would be served in again remitting petitioner to the state courts. See 28 U.S.C. § 2254; United States ex rel. Stevens v. McCloskey, 239 F.Supp. 419, 421–422 (S.D.N.Y.), aff'd, 345 F.2d 305 (2d Cir. 1965).

7. See Townsend v. Sain, 372 U.S. 293, 314, 318, 320, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

8. The Assistant Attorney General stated that the minutes, if any were taken, could not be located. In the State's brief upon petitioner's appeal to the Appellate Division (p. 6), reference was made both to the "minutes of sentence" and to the "minutes of the arraignment," which suggested to this Court the existence of stenographic records of each of those occasions. However, the States' representative said these references were inadvertent and what probably was intended was the judgment, which simply contains endorsements or notations.

stitutional standard was applied in passing upon his claim.

■■ In consideration of the issues it is desirable to set forth the standard to be applied. In Carnley v. Cochran,[9] the Supreme Court held that only where the record demonstrates a petitioner's "affirmative acquiescence" in the surrender of his right to counsel is the burden upon him to establish that he did not intelligently and understandingly waive his right. While the phrase "affirmative acquiescence" was not defined, in this Court's view it encompasses that the accused (1) was advised of his right to counsel, and (2) consented to proceed without representation—objective matters normally ascertainable from the judgment roll.

■ The State, at the outset, is aided by the presumption of regularity which attaches to the judgment and which extends to observance by the State of an accused's constitutional rights.[10] But when the petitioner goes forward with substantial evidence which overcomes the presumption of regularity relied upon to estab'ish that the judgment was free of constitutional taint, "the presumption is out of the case"; [11] thereupon the burden is upon the State to establish "affirmative acquiescence"— that in fact petitioner was advised of and waived his right to counsel and, if it succeeds, only then is the petitioner called upon to prove by a fair preponderance of the evidence that his waiver was not competently or understandingly made. And, of course, if the State fails to sustain its burden on "affirmative acquiescence," that would end the case.

On May 14, 1943, the petitioner, then sixteen years of age, and three other youths were arrested and charged with a holdup which netted them $41. On the following day he was brought before a magistrate, waived examination and was committed to await grand jury action. A four count indictment was returned on May 25, 1943 charging petitioner and two of the others with robbery in the first degree, robbery in the second degree, grand larceny in the first degree and assault in the second degree. The very next day he was arraigned and pled guilty to robbery in the first degree. His next appearance before the Court was on June 16, when sentence was imposed. At no time—preliminary hearing, pleading or sentence—was petitioner represented by counsel.

The State, in support of its position that petitioner was fully advised of and waived his right to counsel, relies principally upon a rubber-stamped notation on the back of the indictment, which reads:

"Before pleading to the indictment the defendant was informed of his right to counsel and was asked if he desired the aid of counsel. The defendant did not ask for the aid of counsel. The defendant entered a plea of guilty to * * *."

following which is a handwritten notation that the plea was to robbery in the first degree.

The petitioner, to overcome the presumption of regularity, testified in substance here and in the state proceeding that when he was arraigned somebody read the charges to him; he was asked how he pleaded, to which he replied guilty; that he was not told he was en-

9. 369 U.S. 506, 517–518, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). See also, Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir. 1964); Post v. Boles, 332 F.2d 738, 740 (4th Cir. 1964).

10. United States v. Morgan, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954); Bute v. Illinois, 333 U.S. 640, 672, 68 S.Ct. 763, 92 L.Ed. 986 (1948); Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

11. People v. Richetti, 302 N.Y. 290, 298, 97 N.E.2d 908, 912 (1951), and on remand, 109 N.Y.S.2d 29, 42–43 (County Ct. 1951). See also, Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941); People v. Guariglia, 303 N.Y. 338, 342, 102 N.E.2d 580 (1951); Matter of Bojinoff v. People, 299 N.Y. 145, 151, 85 N.E.2d 909 (1949).

titled to be represented by a lawyer; that he did not know he had the right to a lawyer; that he wasn't told the State would assign one; that he did not say he did not want a lawyer, nor did he refuse one; that he was not advised that an adjournment to obtain legal representation would be granted; that he did not know the distinction among the counts in the indictment; that he did not understand the meaning of felony, indictment and waiver; that he was unfamiliar with courts and court procedure, his sole prior experience having been as a juvenile delinquent; that except he knew he was pleading guilty, he was unaware of what was happening. He acknowledged upon cross-examination the possibility that he might have been told he had a right to counsel and that he might have been asked if he had funds to engage one, although he believed that he had not been.

■ It is, of course, true that the mere denial by petitioner of the rubber-stamped entry on the judgment roll does not compel acceptance by the Court, nor does it, in and of itself, satisfy petitioner's burden of overcoming the presumption of regularity. On the other hand, the Supreme Court has repeatedly admonished in both Federal and state collateral attacks upon judgments of conviction "that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' * * * Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was

offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." [12]

The State called no witness to rebut petitioner's testimony. Also, offered the opportunity to present the stenographic transcript, it produced none. It is true that the judgment was first attacked twenty years after its entry, but lapse of time presents problems to petitioner, as well as to the State.[13] There is no contention that minutes were not taken and no adequate explanation was offered for their nonproduction. In any event, a stenographic transcript would have put beyond challenge what was said by the Court to petitioner and his response, if any. Moreover, the State offered no testimony either as to what had occurred at petitioner's pleading and sentencing or as to the practice or custom of the Trial Judge in advising defendants of their right to counsel.[14] The cryptic rubber-stamped endorsement, evidently intended to indicate compliance with New York law,[15] even if accepted at face value, leaves much to be desired. It contains no statement that petitioner was told he could have an adjournment to obtain counsel or that the Court would appoint an attorney if he could not afford to retain one,[16] and the statement that the indigent sixteen year old "defendant did not ask for aid of counsel" does not reveal whether he specifically refused the aid of counsel or remained silent. In any event New York as well as Federal courts attach little probative weight to such entries.[17]

The State, to buttress its position, offered in evidence a copy of the com-

12. Carnley v. Cochran, 369 U.S. 506, 514, 516, 82 S.Ct. 884, 889, 890 (1962); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019 (1938).

13. Haywood v. United States, 127 F.Supp. 485, 487–488 (S.D.N.Y.1954).

14, Compare Moore v. Michigan, 355 U.S. 155, 157, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Post v. Boles, 332 F.2d 738, 740 (4th Cir. 1964); United States ex rel. Noll v. Fay, 219 F.Supp. 262, 265 (S.D.N.Y.1963); Haywood v. United States, 128 F.Supp. 821 (S.D.N.Y.1955).

15. N.Y.Const., art. 1, § 6; N.Y.Code Crim. P. §§ 8, 88, 308.

16. See Wright v. Dickson, 336 F.2d 878, 883 (9th Cir. 1964); In re Johnson, 42 Cal.Rptr. 228, 398 P.2d 420, 424 (1965). Cf. Otney v. United States, 340 F.2d 696, 702 (10th Cir. 1965).

17. See Wright v. Dickson, supra, 336 F.2d at 883; Matter of Bojinoff v. People, 299 N.Y. 145, 149–150, 85 N.E.2d 909 (1949); People v. Richetti, 109 N.Y.S. 2d 29, 37–38 (County Ct.1951).

plaint upon which defendant was held in the District Court where, also without counsel, he waived a hearing. A printed form on the reverse side of the complaint reads that the defendant was informed as follows:

"You are charged with the crime of Sec. 2124 Penal Law.

"You have the right to the aid of counsel in every stage of the proceedings, and before any further proceedings are had.

"*Question.* Do you require counsel? If you do, you will be allowed a reasonable time to send for him, and the examination will be adjourned for that purpose."

In handwriting appears "No." This entry, rather than supporting the State's present claim, undermines it. If it does reflect what was said to the petitioner, it indicates that on this occasion, unlike the time of his plea of guilty, he was told a reasonable adjournment would be granted to obtain counsel; significantly, however, although informed he had the "right to the aid of counsel," there was again an omission to advise him that the State would appoint counsel if he were indigent.

 The record, as supplemented by the hearings, does not permit a finding that the petitioner was fully and adequately informed of his right to counsel and that he acquiesced in proceeding without one. But even if such a finding were permissible, there remains the further issue whether his acquiescence was sufficiently understanding and intelligent to amount to an effective waiver.[18] The issue is to be determined against the totality of all the circumstances, including petitioner's age, family background, schooling, nature of the charges and his relative inexperience.[19] His age alone permits an inference that the waiver was not intelligent.[20]

The petitioner was charged with serious crimes in four separate counts, each of which would upon conviction permit the imposition of a heavy prison term. When arraigned he had been confined to jail in lieu of bail for almost two weeks. Except for his youthful codefendants, nobody stood at his side; he was without friend or family. His parents were dead; he had been living in foster homes since he was eleven; his public schooling ended at the eighth grade; he attended some classes while confined to a state training school as a juvenile delinquent. It is beyond serious challenge that he was unfamiliar with legal procedure or the significance of the differences in the four counts, and that he was incapable of defending himself against the charges or even of adequately urging upon the Court factors in mitigation of sentence.[21]

 To intelligently and understandingly effect a waiver of one's right to counsel involves a reasoned judgment and a deliberate choice based upon adequate knowledge of what that fundamental right encompasses. This underscores the responsibility upon the Trial Court to make meaningful inquiry to insure an accused is advised of and fully understands the nature of his right, and further that he is competent to make an informed decision. The duty is not met, without more, by perfunctory statements and routine inquiry, as disclosed by a rubber-stamped notation, particularly in the case of a sixteen year old of meager schooling who stands alone facing seri-

---

18. Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

19. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); In re Johnson, 42 Cal.Rptr. 228, 398 P.2d 420, 426 (1965).

20. Williams v. Huff, 79 U.S.App.D.C. 326, 146 F.2d 867, 868 (D.C.Cir. 1945), cited with approval in Moore v. Michigan, 355 U.S. 155, 165, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). Cf. Uveges v. Pennsylvania, 335 U.S. 437, 442, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Wade v. Mayo, 334 U.S. 672, 683, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948). Compare Zales v. State of Louisiana, 234 F.Supp. 1021, 1022 (E.D.La. 1964).

21. Cf. Moore v. Michigan, 355 U.S. 155, 160, 78 S.Ct. 191 (1957).

ous charges. The Supreme Court itself has underscored the thoroughness and the range of inquiry to be made: [22]

"'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused— whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

Our own Court of Appeals similarly has stressed the need for searching inquiry. In United States v. Plattner it emphasized the responsibility of "the presiding judge, by recorded colloquy with the defendant, to explain" the various choices available, the advantages of legal representation, and the consequences of a waiver, so that there emerges " * * * a record sufficient to establish to our satisfaction that the defendant 'knows what he is doing and his choice is made with eyes open.'" [23] While these cases are Federal prosecutions, in view of the Federal character of the right to counsel, the State standard can be no less.[24] And indeed the New York Court of Appeals has indicated it is no less and that more is required than a pro forma inquiry.[25]

▇▇▇ The record is barren of any evidence or even a suggestion that the Court before accepting the alleged waiver inquired as to petitioner's education, his background, his experience, his comprehension or mental capacity, or that it inquired as to the facts underlying the charges or informed him as to the distinction among them, or the permissible punishment under each. The various crimes charged in the different counts in this indictment usually are "a closed book to the average layman"; [26] yet without benefit of legal advice and without a searching inquiry to make certain this sixteen year old understood his right to counsel and what its surrender entailed, a plea of guilty was accepted to the most serious crime charged against him and which carried with it the longest term of imprisonment.

Apart from the scope of the petitioner's rights under the Federal Consti-

22. Von Moltke v. Gillies, 332 U.S. 708, 723–724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), quoting in part from Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

23. 330 F.2d 271, 276 (2d Cir. 1964). Accord, Bagley v. Washington State Bd. of Prison Terms & Paroles, 323 F.2d 510, 512 (9th Cir. 1963); In re Johnson, 42 Cal.Rptr. 228, 398 P.2d 420 (1965). Cf. Cross v. United States, 325 F.2d 629, 633 (D.C.Cir. 1963).

24. Post v. Boles, 332 F.2d 738, 743–744 (4th Cir. 1964) (dissenting opinion); In re Johnson, 42 Cal.Rptr. 228, 398 P.2d 420 (1965).

25. People v. Marincic, 2 N.Y.2d 181, 158 N.Y.S.2d 569, 139 N.E.2d 529 (1957).

26. Williams v. Kaiser, 323 U.S. 471, 475, 65 S.Ct. 363, 366, 89 L.Ed. 398 (1945).

tution, his right to the assistance of counsel under New York's Constitution and statutes applies to every stage of a criminal case and "includes a reasonable time to obtain counsel." [27] Here, not only is the record at the time of the entry of plea silent as to any adjournment to obtain counsel, but when sentence was imposed three weeks later he was still without counsel, and no statement was made as to his right.

That the guiding hand of counsel was no mere formality appears from another circumstance. Some six weeks before petitioner's plea of guilty to the serious felony charge, the Governor of the State approved the Youthful Offender Law enacted by the Legislature.[28] However, its effective date was September 1, 1943. With a new legislative act reflecting the State's policy in the treatment of youthful offenders, common experience suggests that knowledgeable counsel would have urged upon the Court deferment of the plea or taken other steps to gain the benefit of the Act; and neither is it beyond the realm of reasonable probability that such efforts would have been recognized.

Upon this record, and after observing the petitioner, who even at this date appears of limited intelligence, the Court finds that petitioner has sustained his burden of proof and that the claimed waiver was not competently or intelligently made.[29] Accordingly, the judgment of conviction entered on June 16, 1943 in the Nassau County Court is hereby declared void and the writ is sustained.

Settle order upon notice returnable no later than three days from the date hereof. The order may contain a provision for a stay of its effectiveness for a period of five days to permit the State to apply for a stay to the Court of Appeals pending an appeal if the State is so advised.

## ADDENDUM

The day after the Court filed its Opinion, it received the current advance sheet reporting the New York Court of Appeals' decision in People v. Witenski, 15 N.Y.2d 392, 259 N.Y.S.2d 413, 207 N.E.2d 358 (1965), a case strikingly similar to petitioner's except that the crime charged was a misdemeanor. In Witenski, three teenagers, without the benefit of counsel, had pleaded guilty and had been sentenced to terms of fifty-five days, reduced on appeal to seven. The docket entries showed that prior to their pleading the defendants had been advised, in compliance with Section 699 of the Code of Criminal Procedure, that:

> "You are entitled to the aid of counsel in every stage of these proceedings, and before any further proceedings are had. You are entitled to an adjournment for that purpose and upon your request I will send a message to any counsel you name within this jurisdiction. Do you desire counsel?" [The answer was "no."]

This statement, which omitted any reference to the right to have counsel appointed, said New York's highest court, was insufficient "to inform these youths that, if they had no money to pay attorneys, the court would assign attorneys to defend them." Accordingly, the court held their purported waiver of the right to counsel was uninformed and ineffective

---

**27.** People v. Waterman, 9 N.Y.2d 561, 565, 216 N.Y.S.2d 70, 74, 175 N.E.2d 445 (1961), and cases there cited.

**28.** N.Y.Sess.Laws 1943, ch. 549, permitting the Court to treat an accused over sixteen and under nineteen as a Youthful Offender. In that event, commitment or probation could not exceed three years. See N.Y.Code Crim.P. §§ 913-e to r.

**29.** This disposition makes it unnecessary to consider petitioner's alternative claim that as a matter of law he was incompetent, as a sixteen year old, to waive his constitutional rights, the contention being predicated upon New York State law, which imposes various civil disabilities upon persons under twenty-one years of age.

and reversed the convictions. The fact that the offense charged was a misdemeanor did not relieve the state of its duty fully and fairly to advise the defendants of their right to counsel.