Jack Rosenberg, J.
This is a motion coram nobis to set aside a conviction and sentence under subdivision 8 of section 722 of the Penal Law, on the ground that the conviction was the result of the court’s failure properly to advise the defendant, the moving party herein, of his right to be represented by counsel during all proceedings growing out of the charge against him. It is conceded that the defendant was without representation by counsel at. his arraignment, plea and sentence which took place at one and the same time.
There is a claim by the People that defendant was advised of his right to counsel at the time of the hearing and that he waived the right. But defendant claims that if such a waiver can be read into his conduct at the hearing, it was not made by him *126 intelligently and with understanding on his part of his right to such assistance.
The conviction sought to be set aside occurred on August 11, 1949 before the Hon. Hyman Bushel (now retired), then a Magistrate of the City of New York. It was based on a plea of guilty. The defendant was arrested on August 11, 1949 at about 2:45 a.m. The arraignment took place the same morning. Defendant’s physical condition at that time has been described by him to be “ nervous ” and that he had not slept that previous evening or morning. That the last time that he had slept was the evening prior to the evening of the alleged offense. His occupation then was ‘ ‘ tailor ’ ’. He is now the proprietor of a grocery store, for which successful operation a beer license is necessary. At the time of his plea of guilty he had no previous record of involvement with criminal courts. Defendant pleaded guilty to a charge under which disturbance of the peace is involved and the same allegedly took place at his apartment.
The minutes of the hearing on August 11, 1949 show that the charge against defendant was read to him by the “ bridge man Defendant testified on the hearing before this court, held on October 7, 1965, that the ‘ ‘ Bridge officer read at such a rapid speed that the resulting effect was a pronouncement of mere words with no meaning.” The original minutes of the arraignment proceeding show that after the charge had been read, the “bridge man” asked, “Did you understand what I read to you? ” and the defendant replied “ Yes sir ”. Thereafter the “ bridge man ” informed defendant that on that charge he could have an immediate trial, or could request an adjournment “ to secure an attorney or witnesses ” and then asked defendant if he was ready, to which defendant replied in the affirmative. The next question was: “ How do you plead? Guilty or Not Guilty? ” to which defendant responded “Guilty”. He was thereupon given a suspended sentence.
Defendant states in his moving affidavit: 1 ‘ The cases were called rapidly and disposed of quickly so that I pleaded guilty without any knowledge of the consequences of my act or my rights in connection with such proceedings ”. While the testimony contained in the minutes of the hearing held on October 7, 1965 supports the foregoing statement and is without contradiction (“ I just heard somebody rattle words off fast ”), this court must note that its experience in many similar arraignments almost permits it to take judicial notice of the fact that the speed with which the court must proceed if it is to complete its calendar, often is such as to raise serious question as to whether a defend *127 ant without previous experience in such matters and without counsel is not left, like the moving party here, in a similar state of bewilderment and ignorance of his rights, coupled with the feeling that it is best for him to go along with the court and to throw himself on its mercy, rather than to delay 11 things ’ ’ by asking for a postponement or pleading “ Not Guilty ”,
In fact, this statement in defendant’s moving affidavit brings to mind an article by the court’s learned colleague, Judge J. Howard Eossbach which appeared in the Bar Bulletin, New York County Lawyers Association and which deals with the administration of justice in the present Criminal Court of the City of New York, successor to the Magistrate’s Court. Judge Eossbach says: “As the pressures of pending cases mount, the speed increases. One recalls a former cigarette advertisement which began ‘ Listen to the chant of the tobacco auctioneer ’: There followed a string of rapid gibberish which ended with a triumphant: ‘ Sold American. ’ We have not as yet reached that stage in courtroom procedure, but surely we are approaching it.” (Yol. 21, No. 1, 1963, p. 18.)
Jndge Eossbach’s article was written some six months after the creation of the Criminal Court of the City of New York. This court is by no means certain that events have not outstripped Judge Eossbach’s prediction in the last sentence of the above quotation. It may well be that we are already at the stage where the pressure for speed in handling of cases has resulted in some, if not all, of the court’s procedure being gibberish to the defendant unrepresented by counsel.
Defendant’s description in his affidavit of the bewildering effect on him of his colloquy with the ‘ ‘ bridge man ’ ’ is foreshadowed by the description given of a similar colloquy in Judge Eossbach’s article. He says: “As it works out, a policeman ushers a defendant before a judge and his overworked ‘ bridge man ’. The latter rushes through the reading of the charge in a blur of language and then advises the defendant: ‘ On-these-charges-rightta-counsel-evvy stage-ada-proceedings-rightta-joinment-obtain-counsel-rightta-telephone-call-warden’s-office-free-acharge - rightta - hearing- this - court -rightta - trial - by - one - judge - a-panel-three-judge-howdya-plead-guiltya-notguilty. ’ ’ (Ibid., p. 18.)
Of course, the foregoing is a description of what occurs in the Criminal Court of the City of New York, not of what occurred in the old Magistrates’ Conrt, but anyone familiar with said court would acknowledge similar applicability. The fact is that the reorganization which resulted in the creation of the Prim *128 inal Court replacing the Magistrates’ Court and the Court of Special Sessions was the result of a hue and cry against trial delays primarily in the lower civil courts. The reorganization of those lesser civil courts may have done away with some of the trial- backlog. But, when the same remedy was applied to the lesser criminal courts, insufficient attention was paid to the special needs of criminal jurisprudence which include a decent respect for the constitutional safeguards of due process such as the right to counsel, to obtain witnesses, etc. As my learned brother Judge Rossbach has noted: “Too much haste can destroy dignity and fetter justice in our new criminal court system”. (Ibid., p 14.) The need to insure speedy criminal trials is paramount. But never must that need and the desire of judicial administrators to show statistical success in disposing of ever-mounting numbers of petty criminal charges, which are mounting in greater numbers as indicated by present Police Department Reports, be allowed to bring about the denial of rights guaranteed by our State and Federal Constitutions and our Code of Criminal Procedure or to impair the respect for our courts which is necessary if justice is to be properly administered.
The issue raised by the motion here under consideration, safeguarding of the right of all defendants in criminal matters to counsel and insuring a knowing waiver of this right, if waiver is claimed, is one which has been much under consideration by the courts in recent years. The landmark case decided in 1963 is Gideon v. Wainwright (372 U. S. 335, 344) where the United States Supreme Court said: “Not only these precedents but also reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him * * * The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours.” This doctrine has been fully accepted in the courts of our State. (See People v. Donovan, 13 N Y 2d 148 [1963]; People v. Failla, 14 N Y 2d 178 [1964] and People v. Taylor, 22 A D 2d 524 [1965].)
In People v. Marincic (2 N Y 2d 181), where the facts which related to an arraignment were almost identical with those of the case here under consideration, differing, if at all, only in that the evidence from which a waiver might be inferred was there stronger. Judge Desmond, speaking for the Court of Appeals said, after citing section 699 of the Code of Criminal Procedure *129 (p. 184): “ The statute necessarily means, to l)o effective at all, that the court must make it clear to a defendant * * * that her right is not only to have counsel if she so wishes but also to have all further proceedings postponed until she shall have consulted with counsel and taken his advice, etc. Telling a defendant, probably ignorant of court procedures, that she is entitled to counsel * * * without waiting for any reply from the defendant, asking her how she pleads and taking her guilty plea is not a compliance with either the spirit or the language of that section ”.
In People v. Berg (200 Misc. 203, 204), Mr. Justice Oliver of the Court of Special .Sessions, sitting in the Appellate Term of that court, after examining the reading of defendant’s rights on arraignment said: 11 It is plain that this manner of notifying a defendant rapidly of his rights without stopping to give him a chance to claim a single one of them reduces the notification to a nullity.” Referring to section 699 of the Code of Criminal Procedure he stated (p. 205): “ The Magistrate in person should notify the defendant of his rights and receive a reply from the defendant on each one of them and the answers should be recorded verbatim by the stenographer. We are fortunate in the scholarship and sense of justice of the Magistrates of our city, who should see to it that an important function is not delegated to court attendants.”
A recent decision in the Federal court, here in the Southern District of New York, has also dealt with the question of the waiver of constitutional rights on arraignment. Mr. Justice Weineeld, in United States v. Fay, decided June 1, 1965 (242 F. Supp. 273) said that it is well-settled law that only where the record on arraignment demonstrated “ affirmative acquiescence ” by the defendant, has such a defendant the burden to establish that he did not intelligently and understandingly waive his right. Mr. Justice Weihebld noted that United States Supreme Court decisions “ repeatedly admonished ” that courts indulge every reasonable presumption against waiver of fundamental constitutional rights and he therefore refused to presume acquiescence in the loss of such rights. He said (p. 278): “ To intelligently and understandingly effect a waiver of one’s right to counsel involves a reasoned judgment and a deliberate choice based upon adequate knowledge of what that fundamental right encompasses. This underscores the responsibility upon the Trial Court to make meaningful inquiry to insure an accused is advised of and fully understands the nature of his right and further that he is competent to make an informed decision. The *130 duty is not met, without more, by perfunctory statements and routine inquiry ’ ’.
In the motion before us we are faced with a failure by the court to advise the defendant properly of his right, pursuant to sections 188, 308 and 699 of the Code of Criminal Procedure, to have counsel to defend him. This is, in our opinion, a fatal defect.
This court’s experience has served to make it most sensitive to the problem raised by the instant motion. The large number of cases assigned to be heard and disposed of at each session of the court creates a pressure for speed in hearing and determination which necessarily affects the administration of justice adversely. This pressure has made it most difficult for. this court, although it has meticulously tried to do so, to observe all the safeguards required by due process, to insure that every defendant in the criminal matters coming before it is advised of the full extent of his right to counsel, his privilege against self incrimination, his immunity from unlawful searches and seizures, including a proper and full presentation by all parties. It is not surprising that without the proper directives and the allowance of time for the necessary implementing procedures therefor, that these rights may be allowed to lapse. This court has made clear its abhorrence of disposing of record numbers of cases in the briefest possible time if it hampers the doing of justice. Eather, this court has insisted upon proper arraignment procedures and safeguarding the constitutional rights of all persons coming before it, regardless of time consumed. Its interest is in people, not statistics.
Nor does the fact that the Criminal Court of the City of New York deals with lesser criminal matters, offenses and misdemeanors rather than felonies, serve to minimize any failure to secure to all criminal defendants, all their constitutionally guaranteed rights. In fact, the less serious of the matters dealt with in that court serves as an excuse for practices which should never be regarded as minor. The type of the offenses involved should never be allowed to obscure the fact that all of our courts have as their sole goal the meting out of justice, not the speediest possible disposition of the large number of cases assigned to the court. Justice may never be allowed to become less important than statistical tables showing high numbers of cases disposed of in short periods of time.
The need of defendants, even in cases involving the lesser charges dealt with in this court, for the aid of counsel is manifest. Even defendants who are knowledgeable in the law find them *131 selves bewildered by the intricacy of the ordinances, statutes and codes defining the offenses dealt with here. Unfortunately, there is a tendency on the part of most defendants, because of the lesser punishments involved, to plead guilty, pay the fine, and close the matter, rather than to avail themselves of what may be valid answers and defenses, simply because they have not consulted counsel or cannot afford it. This can serve only to diminish respect for our courts and their procedures for administering justice. Even worse, it creates in the public the false notion that constitutional guarantees such as the right to counsel are empty phrases.
Recent legislation amending sections 188, 308 and 699 of the Code of Criminal Procedure (L. 1965, ch. 878, eff. Dec. 1, 1965) has underlined the legislative concern with the requirements and obligations of a Presiding Judge of our Criminal Court to protect the constitutional rights of a defendant on arraignment. Yet this manifestation of legislative concern, too, has resulted in no easing of the pressure for speed in handling-cases, nor any adoption of new procedures to insure safeguarding these rights.
The Judges of this court are all well aware of the provisions of law establishing- the constitutional rights of every defendant on arraignment. But the pressure for maintaining a high norm of cases disposed of, for preventing the creation of a large backlog of cases awaiting- trial, has served to make it most difficult to put that knowledge into operation. Hence, to much too large an extent, the system for disposing of cases has come to depend for its effectiveness on the abandonment by defendants, through ignorance, of their constitutional rights. It was to just such a situation that Mr. Justice Goedbebg was referring in Escobedo v. Illinois (378 U. S. 478, 490 [1964]) when he said: “ We have also learned the companion lesson of history that no system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens’ abdication through unawareness of their constitutional rights. No system worth preserving should have to fear that if an accused is permitted to consult with a lawyer, he will become aware of, and exorcise, these rights. If the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system. (Emphasis added.)
Neither numbers of cases handled nor speed of administration, nor factors of cost or income should outweigh the protection of constitutional rights in any system for the administration of justice. Yet, as the Neiv York World-Telegram of August 21, *132 1965 points out in an editorial entitled “ Justice or Revenue ” (p. 6), the opposite is the ease much too often in the Criminal Court of the City of New York. This court decries practices which result in disregard of constitutional rights. It calls for administrative emphasis on compliance with sections 188, 308 and 699 of the Code of Criminal Procedure in every arraignment, be it for an offense, misdemeanor, felony, or even a mere infraction. Only thus can constitutional rights be observed and protected. Such appropriate corrective measures may also lessen the need for the issuance of hundreds of arrest warrants daily, a need caused by the lack of public respect for and public ignorance of the importance of the Criminal Court, results of the haste and lack of dignity flowing from present speed-up procedures.
It is a fact that many thousands of our citizens have their only contact with the courts when they are charged in the Criminal Court with some lesser offense of the law. It is, therefore, most important that in that contact they be made aware of the concern of the courts with protection of their constitutional rights. If they are not, they may well begin to doubt the fairness of the courts. It was an awareness of this that is reflected in our first President’s appraisal: “ The true administration of justice is the firmest pillar of good government.” It is necessary that the reasons for the blindfold placed on the eyes of the lady holding the scales of justice, symbol of our judicial system, should not be misunderstood by the uninformed public.
In the instant case, the defendant’s sole contact with the court occurred when he was a tailor with a fifth-grade public school education in Italy. His experience, involving a bewildering speedy hearing, no warning of possible effects of a plea of guilty to a charge carrying distasteful implications, no true warning as to his right to and need for counsel before pleading, can hardly serve to teach him that courts respect his rights. Here he found himself, at the time of application herein, severely handicapped in conducting his business because of those prior denials of his rights even in what may have appeared to him at the time as a minor charge. This wrong must be undone.
For the foregoing reasons, the motion coram nobis is granted. The judgment of conviction is vacated and this matter is referred to Part 1C and set down for further proceedings on November 15, 1965.