**Joseph COST, Petitioner,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. 734–E.**

United States District Court
N. D. West Virginia.

Aug. 2, 1967.

James C. West, Jr., Clarksburg, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner Joseph Cost was convicted of grand larceny in the Circuit Court of Monongalia County, West Virginia after entering a plea of guilty without counsel on November 8, 1962. On November 11, 1962, following imposition of an indeterminate sentence of not less than one nor more than ten years,[1] execution of sen-

---

1. The imposition of sentence is reflected by court order on November 10, 1962, submitted as Respondent's Exhibit Num-

ber 3. Though he did not raise the issue in his petition, at the plenary hearing held in this Court on July 7, 1967, Peti-

tence was suspended and Petitioner was placed on probation for three years. Three months short of the end of the three year period, Cost violated the conditions of probation, and probation was revoked. Cost has since been in the custody of Respondent.

Cost's sole claim for federal habeas corpus relief is that he did not intelligently waive his right to counsel on November 8, 1962.[2] Following the issuance of an order to show cause Respondent submitted with his answer a copy of the state trial court's order of November 8, 1962, as Respondent's Exhibit Number 2, which merely stated that Cost, "being without counsel, did not desire counsel appointed by this Court to represent him."

Respondent's answer also reported that no transcript was ever made of Cost's arraignment or sentencing. However, Respondent alleged that the issue here had been squarely raised on two occasions in two different West Virginia trial courts—once on a petition for habeas corpus in the original sentencing court, and once on motion for directed verdict during a subsequent prosecution for escape. In each instance hearings were held, with counsel appointed for Petitioner, and Respondent alleged, in paragraphs 2 and 4(b) of the answer,

that each was a "full evidentiary hearing."

Since this Court felt compelled to conduct its own hearing, an explanation of that decision seems in order.[3] It is also necessary to state the applicable rules in federal habeas corpus for ascertaining whether a person has intelligently waived his right to counsel.

■ Essentially, the rules amount to an apportioning of respective burdens of proof. As stated by the United States Court of Appeals for the Second Circuit, United States ex rel. Jefferson v. Fay, 364 F.2d 15, 17 (1966), the procedure is as follows:

Initially, the burden is on the State to demonstrate that a petitioner *affirmatively acquiesced* in the surrender of his right to counsel, i. e., that he was advised of and waived the right. Once the State satisfies that requirement, the petitioner is "called upon to prove by a preponderance of the evidence that his waiver was not competently or understandingly made." United States ex rel. Brown v. Fay, 242 F.Supp. 273, 276, (S.D.N.Y.1965). (Emphasis added.)

See also Moore v. State of Michigan, 355 U.S. 155 at 161–162, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957).

tioner testified he was never in fact sentenced. The Court finds, however, that Cost's self-serving testimony does not overcome the evidence of record.

2. Actually, in the petition, Cost stated that "They [apparently indicating the state trial court] never asked me if I wanted one [meaning an attorney]." But in his rebuttal Petitioner was more careful and alleged only that he did not "intelligently waive" counsel. At the hearing held in this Court, Cost agreed that he had been asked if he "wanted" counsel. The issue then became whether he understood his right to free counsel as an indigent person.

3. Such an explanation is advocated in a recent, informative article, Wright and Sofaer, Federal Habeas Corpus for State Prisoners: The Allocation of Fact-Finding Responsibility, 75 Yale L.J. 895, 920–21 (1966):

Moreover, while the Court [in Townsend v. Sain] has apparently succeeded in checking any tendency in district judges improperly to deny hearings, the opposite tendency may well have set in. It is not enough, if state fact-finding is to have its proper significance, to grant federal habeas corpus hearings simply because of "the seriousness of the charges." If cooperation from the states is expected, they are entitled to reasons, and to good reasons, every time their records or findings are deemed inadequate. The hopelessness often expressed as to the future of state post-conviction review is, in general, still unfounded. Federal courts often take great pains to give weight to state court cooperation. But the tendency to grant hearings to avoid reversal and to "get the matter settled once and for all" is very real, and jeopardizes the present distribution of decision-making functions.

The United States Court of Appeals for this Circuit defined the nature of the inquiry in the following language, Starks v. United States, 264 F.2d 797, 799–800 (4 Cir. 1959):

> The defendant who seeks relief under § 2255 [the equivalent of federal habeas corpus for state prisoners] must still bear the burden of showing he did not understand his constitutional rights. The fact that the written record, itself, does not contain an emphatic and direct answer to a claim that the court's explanation was insufficient opens the door to collateral attack, but it does not necessarily mean that such collateral attack must be successful. We are entitled to look at the entire record, the nature of the charge, the defendant's circumstances, his experience in court proceedings, and other relevant matters, and, if it then appears, even without a hearing, that the defendant did not lack understanding of his constitutional rights, the petition should be denied.

See also, Post v. Boles, 332 F.2d 738 (4 Cir. 1964).

With this background on the legal issue, the Court now sets forth its reasons for holding its independent hearing in this matter.

In Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), the Supreme Court indicated that federal habeas corpus hearings were mandatory if:

(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of ·fact did not afford the habeas applicant a full and fair fact hearing.

Keeping in mind these general criteria,[4] the Court examined each of the two state court evidentiary hearings.

On May 24, 1966, a hearing was held on Cost's state petition for habeas corpus in the Monongalia County Circuit Court —the court which originally convicted and sentenced Petitioner. At that hearing Petitioner, who was represented by court-appointed counsel, was the sole witness.

Cost testified he had been asked by the trial court if he "wanted" counsel, but did not understand this to mean that, ·if he could not afford an attorney, one would be appointed for him. (Trans. p. 7). Petitioner then stated that his formal education ended with the seventh grade, and that his prior court experience was limited to a single appearance as a juvenile. (Trans. pp. 9–10).

There was no cross-examination by the state. However, the trial court did question Cost as follows:

Q. Well now as a matter of fact, Mr. Cost, when you were arraigned that morning, the first question that was asked you was whether or not you were represented by an attorney, and you said you weren't?

A. I believe it was.

Q. Next the Court asked you if you wanted the Court to appoint an attorney for you since you didn't have

---

4. It is appropriate to observe here that the Supreme Court in *Townsend*, 372 U. S. at 318, 83 S.Ct. at 760, also stated the following:

> The purpose of the test is to indicate the situations in which the holding of an evidentiary hearing is mandatory. In all other cases where the material facts are in dispute, the holding of such a hearing is in the discretion of the district judge. * * * In every case he has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim. There is every reason to be confident that federal district judges, mindful of their delicate role in the maintenance of proper federal-state relations, will not abuse that discretion.

any and you said you didn't; that you wanted to plead guilty.

Q. I think that's all.

It must be noted that Cost did not answer the trial court's final question. The court then denied the petition, stating simply, "I don't think there is any misunderstanding here at all." (Trans. p. 14).

Under the circumstances this Court cannot find that the first test enunciated in *Townsend* has been met. It is not clear that "the merits of the factual dispute" have been "resolved in the state hearing."

In elaborating on this first standard the court in *Townsend* stated, 372 U.S. at 313–314, 83 S.Ct. at 757, that "There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant."

In the state court hearing on May 24, 1966, it is not clear whether the court decided against Petitioner because it accepted his version of the original trial court advice, that he was simply asked if he "wanted" counsel, but found that Cost nevertheless fully understood the import of the offer, or whether it relied on its own recollection that Petitioner had been told the court would "appoint an attorney."[5]

Further, since the state court did not present any statement of the reasons for its finding, there is no way of knowing whether that court considered the evidence regarding Cost's education and limited prior court experience.

On balance, the state court hearing on May 24, 1966, did no more than "create doubt as to whether the correct standard has been applied." In such a situation *Townsend* holds that a federal hearing is required. 372 U.S. 293, 315 at footnote 10, 83 S.Ct. 745.

Respondent also alleged that another state court proceeding constituted a full evidentiary hearing. This hearing took place on October 13, 1966, during the trial of Petitioner for escape in the Circuit Court of Randolph County.

At the close of the State's case, Petitioner's counsel invoked the defense that Cost's original conviction was invalid and thus he could not be convicted of escape from incarceration based on the void conviction. See State ex rel. McGilton v. Adams, 143 W.Va. 325, 102 S.E.2d 145, 70 A.L.R.2d 1425 (1958). The issue now presented to this Court, namely, whether Cost had intelligently waived his right to counsel, was adequately and fully raised in a motion for directed verdict.

A hearing was held outside the hearing of the jury in which Petitioner testified he had not been advised by the convicting state trial court in any manner of his right to counsel. (Trans. pp. 9–10). The State produced two witnesses, present at Cost's arraignment when he pleaded guilty. Both, however, testified solely on the basis of their knowledge of the court's custom and usual practice, and not from memory. (Trans. pp. 19–23, 27–28).

After all the testimony was in, the Randolph County Circuit Court ruled the issue to be one that could be presented to the jury. (Trans. p. 30). Cost's attorney, after consulting his client, chose not to raise the issue before the jury.

Accordingly, we have a situation here that precisely fits the first *Townsend* situation where a federal hearing is mandatory: "the merits of the factual dispute were not resolved in the state hearing." Further, if the Court accepted Respondent's contention that this was a

---

5. Another troublesome feature of this hearing is that, in effect, the judge presiding over the state habeas corpus hearing was a witness against Petitioner. Perhaps understandably, Petitioner's counsel made no effort to cross-examine the judge who was also the fact-finder. It is questionable whether such a hearing—where the court is both an interested witness and trier of fact—would ever be an adequate hearing on which a federal district court or other state court could rely.

full evidentiary hearing, the Court could not, on the evidence there adduced, find against Petitioner.

Petitioner was therefore appointed counsel by this Court and a hearing was held on July 7, 1967. At that hearing Cost and the state trial judge who had accepted his plea were the only witnesses.

The state court judge admitted he was testifying mainly as to his general practice and not from specific recollection of Cost's case. Although he felt sure he had fully advised Petitioner of his constitutional rights, the judge's only specific testimony coincided with Petitioner's—the convicting court asked Cost if he "wanted" counsel.

Notwithstanding the inadequate admonition which, combined with the absence of a transcript of the arraignment, necessitated this entire inquiry,[6] the Court feels that the question of whether a defendant "wants" counsel "fairly implies the availability of the assistance of the court in obtaining counsel if he wished it." Starks v. United States, 264 F.2d 797, 800 (4 Cir. 1959). And see Post v. Boles, 332 F.2d 738, 740 (4 Cir. 1964). Thus, the Court feels that the State has borne its initial burden of proving Cost's "affirmative acquiescence" in proceeding without counsel.

The inquiry now turns to determining whether Cost has overcome this evidence by proving by a preponderance of the evidence that he did not intelligently waive his right to counsel. The Court finds that Petitioner has not met this burden.

It is apparently true that Cost was nineteen at the time he waived counsel, that he had only a seventh grade education, and that his only prior court involvement was in a juvenile matter.

On the other hand, this Court observed at the hearing that Cost appeared to be of average intelligence. Further, the nature of the charge, grand larceny, "does not involve a complicated legal question upon which a defendant would be expected to be in need of legal advice" and "the assistance of [counsel] was not necessary to enable the defendant to conclude whether or not he had committed the crime with which he was charged." Starks v. United States, 264 F.2d 797, 800 (4 Cir. 1959).

Finally, it is clear that Cost wanted to plead guilty, and he was probably aware that his chance for probation as a first offender was good. The fact that he did receive probation, later revoked, indicates that he achieved as favorable a result as he could have expected with legal representation.

To conclude, the Court finds that Petitioner's testimony was insufficient to establish and satisfy this Court that he did not intelligently waive his right to counsel when convicted on November 8, 1962, in the Circuit Court of Monongalia County.

An order will be entered dismissing the petition.

---

6. Recently, the Supreme Court, in Miranda v. State of Arizona, 384 U.S. 436, 473, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), made this comment:

In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has a right to counsel with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present.

Though these comments were made in the context of a case involving police interrogation, the principle applies with equal force to the adequacy of advice regarding the right to counsel at trial as indicated by the Supreme Court's approving citation of United States ex rel. Brown v. Fay, 242 F.Supp. 273, 277 (S. D.N.Y.1965), a case involving counsel at trial. See 384 U.S. at 473, footnote 42, 86 S.Ct. 1602.